## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Huseby, LLC, | |
| Plaintiff, | Civil No. 3:20-cv-00167 (JBA) |
| v. | |
| Lee Bailey *et al.*, | July 29, 2021 |
| Defendants. | |
| Lee Bailey, | |
| Counterclaim Plaintiff, | |
| v. | |
| Huseby, LLC, | |
| Counterclaim Defendant. | |

## RULING AND ORDER ON PLAINTIFF'S MOTION TO COMPEL [ECF No. 53]

The plaintiff, Huseby, LLC ("Huseby"), has moved for an order compelling the defendants Lee Bailey, Brandon Legal Tech, Brandon Legal Group and John Brandon (together, "Defendants") to comply with fourteen interrogatories and thirty-five requests for production. (Pl.'s Mot. to Compel, ECF No. 53, at 1.)  Huseby also asks the Court to "order Defendants to pay [its] reasonable expenses incurred for bringing this motion."  (*Id., see also* Pl.'s Memo. of L. in Supp. of Mot. to Compel (hereinafter "Memo."), ECF No. 53-1, at 1.)  For the following reasons, Huseby's motion is **GRANTED IN PART AND DENIED IN PART** as set forth more fully below.

1

## I.   BACKGROUND

Huseby is a court reporting firm with headquarters in North Carolina.  (*See* Am. Compl., ECF No. 27, ¶ 1.)  It was formerly known as Huseby, Inc. ("HSI"), but in 2018 it converted itself into an LLC.  (*See id.* ¶ 14; *see also* N.C. Sec'y of State, Business Records Search Portal, www.sosnc.gov.)  Huseby claims to have succeeded to HSI's rights under its various contracts, including its employment agreements with its former employees.  (*See* Am. Compl., ECF No. 27, ¶ 14.)

HSI entered the Connecticut market in 2013 by purchasing Brandon Smith Reporting & Video, LLC from its then-owner, John Brandon.  (*Id.* ¶ 24; *see also* Decl. of J. Brandon, ECF No. 54-3, ¶ 10.)  As part of the deal, Brandon agreed not to compete with HSI or to solicit its customers for a period of five years.  (*Id.* ¶ 11.)  After the deal closed, Brandon became an HSI employee.  (*Id.* ¶ 11.)  In that position, he worked with a HSI sales representative by the name of Lee Bailey.  (*Id.* ¶ 14.)

Huseby says that it had non-competition and non-solicitation agreements with Bailey as well as Brandon.  (Am. Compl., ECF No. 27, ¶ 13.)  Specifically, it claims that while he was employed by the company, Bailey "executed an Employment Agreement" that included the following "post-employment covenants":

- A non-competition clause, under which Bailey agreed "not [to] . . . participate in any business which is in competition with Huseby" "for twelve (12) months after [his] employment is terminated, for whatever reason," with "competition" defined to include "sale to, distribution to or service of any person or entity located within the State of Connecticut (*id.* ¶¶ 17-18);

- A non-interference clause, in which Bailey agreed that he would not "solicit, employ, hire, engage, deal with, retain or use any person employed, or engaged as an independent contractor of Huseby" during his employment or for a year thereafter (*id.* ¶ 19);

- A non-solicitation clause, in which Bailey promised not to "solicit or enter into any transaction with any customer of Huseby" during his employment or during the

year after his separation, with "customer" defined to include "any person or entity to whom any products, processes, goods or services have heretofore been sold by Huseby within the three (3) years preceding the date of" his employment agreement, along with "any person or entity to whom [he] contacted, served, solicited, received a commission for sales generated, or managed the account in the three (3) years preceding" his separation (*id.* ¶ 20); and

- A non-disclosure clause, in which Bailey acknowledged that he would be "receiv[ing] access to confidential information of Huseby" during his employment, and in which he committed to "[m]aintain the confidentiality of the Confidential Information at all times during and after the term of" the employment agreement, with "Confidential Information" defined as "information related to Huseby's business, customers, personnel, suppliers, products and services." (*Id.* ¶ 21.)

In summary, Huseby says that Bailey agreed not to compete against it in Connecticut, solicit its customers, or attempt to lure away its court reporters for a period of one year after his employment ended, and also that he would not reveal the company's customer and court reporter lists and the like. (*See id.* ¶¶ 17-21.)

After Brandon's non-competition and non-solicitation obligations expired in 2018, he formed two new court reporting companies. He established the first – Brandon Legal Tech ("BLT") – in October 2018, and he describes it as a company that "is focused on the Connecticut legal market and provides court reporting services in this state." (Decl. of J. Brandon, ECF No. 54-3, ¶¶ 7, 12.) He formed the second, Brandon Legal Group ("BLG"), in February 2019 "for the purpose of competing in Massachusetts." (*Id.* ¶ 13.)

Bailey left Huseby in February 2019 and went to work for one of the new Brandon firms in March 2019 – but the parties disagree on whether he went to work for BLT, BLG, or both. The Defendants say that "Bailey was hired to and worked on developing business for [BLG] in the Commonwealth of Massachusetts only" – work that, in their view, Bailey could freely do without violating any post-separation obligations to Huseby. (*Id.* ¶ 15.) Huseby, by contrast, contends that Bailey became "employed by" BLT, "worked in the State of Connecticut," "perform[ed] sales

services" in Connecticut, and "solicit[ed] court reporters" in Connecticut, all in violation of his post-employment covenants.  (Am. Compl., ECF No. 27, ¶¶ 21-32.)

Huseby claims to have developed its belief from three principal sources.  First, it viewed Bailey's LinkedIn profile, which identified him as working for both BLT and BLG.  (*See* Ex. A to Decl. of L. Bailey, ECF No. 54-2.)  Second, it says that when its sales director called BLT's Hartford office, a BLT employee told her that "Bailey worked for BLT and . . . was actually working in that office in Hartford."  (Defs.' Opp'n to Mot. to Compel, ECF No. 54, at 6 n.4) (quoting Huseby's response to Defendants' Interrogatory No. 9) (hereinafter "Opp'n").  Third, it claims that Bailey himself "informed several Huseby employees that he was working with BLT and Brandon."  (*Id.*)

In December 2019, Huseby filed suit against Bailey, Brandon, BLT and BLG in the United States District Court for the Western District of North Carolina.  (Compl., ECF No. 1.)  It alleged that Bailey violated his covenants by, among other things, competing in Connecticut and soliciting its clients and court reporters.  (*Id.* ¶¶ 27-32.)  It further asserted that Brandon, BLT and BLG tortiously interfered with its rights under its employment agreement with Bailey, and that they violated the Connecticut and North Carolina Unfair Trade Practices Acts in doing so.  (*See generally id.*)  The parties jointly moved to transfer the case to this district, and the North Carolina court granted the motion on February 4, 2020.  (ECF No. 9.)  The Defendants answered the complaint on April 17, 2020, and Bailey asserted a counterclaim for unpaid sales commissions. (Ans. & Aff. Defenses, ECF No. 28 (Bailey), 29 (Brandon, BLT, BLG).)  The pleadings closed when Huseby answered Bailey's counterclaim on May 8, 2020.  (ECF No. 30.)

The discovery phase of the case began after the parties held their Rule 26(f) conference on July 29 and August 3, 2020.  (Joint Rpt. of Parties' Rule 26(f) Planning Mtg., ECF No. 31, at 1.)

As memorialized in the Rule 26(f) report, Huseby advised the Defendants that it would seek to discover "[a]ll facts and circumstances pertaining to the [sic] Mr. Bailey's employment with" BLT, "[t]he business and other relationships between the various individuals and corporate Defendants," and information in the defendants' possession relating to Huseby's damages. (*Id.* at 5-6.) The presiding District Judge, the Hon. Janet Bond Arterton, reviewed the report and entered a scheduling order under which discovery was to be completed by July 1, 2021. (Sched. Order, ECF No. 32.)

On December 30, 2020, Huseby served fifteen interrogatories and thirty-seven requests for production on the Defendants. (Ex. B to Aff. of M. Carpenter, ECF No. 53-4.) Among other things, Huseby sought information on Bailey's employment with the Brandon entities (*e.g., id.* at 15-16[1]), presumably to test the claim that he worked only for BLG in Massachusetts during his non-compete period. Huseby also sought information on the relationship between BLT and BLG, ostensibly to probe the claim that the geographic and temporal scope of BLG's business coincided with what Bailey could properly do under his post-employment covenants. (*E.g., id.* at 15.) And it asked for customer and price lists used by BLT and BLG both before and after Bailey's job change, presumably to learn whether either company suddenly gained new clients or changed its prices after Bailey came on board. (*Id.* at 18.)

The Defendants believe that Huseby's suit is unmeritorious. In the 26(f) Report, they "strenuously den[ied] that they have done anything wrong or tortious as alleged in the complaint," and they "maintained that the claims advanced against them are completely without merit." (Joint Rpt. of Parties' Rule 26(f) Planning Mtg., ECF No. 31, at 3-4.) They say that Bailey never worked

---

[1]    Some of the exhibits to Attorney Carpenter's affidavit were not paginated. When citing the page numbers of his exhibits, the Court will use the page number stamped in the top margin of the document by the ECF system.

for BLT nor solicited customers or reporters in violation of his employment covenants, and they assert that any seemingly contradictory information in his LinkedIn profile is erroneous and a product of a simple glitch in the way that site presents information. (*See generally* Decl. of L. Bailey, ECF No. 54-2.) They also contend that the things that the Huseby sales director claims to have heard are untrue "hearsay statement[s] . . . that [are] inadmissible even if [they were] made." (Opp'n at 17.)

The Defendants' belief in the meritlessness of Huseby's suit has informed their approach to discovery. They objected to several of the December 30, 2020 discovery requests on the ground that Huseby could not "assert in good faith that Bailey engaged in [the] misconduct" that the request sought to explore. (Ex. C. to Aff. of M. Carpenter, ECF No. 53-5, at 19-20, 24-25) (hereinafter "Responses"). And they objected to other requests on the ground that they were "literally nothing more than a fishing expedition." (*Id.* at 15-16, 19-20, 24-25.) All told, the Defendants objected to fourteen of Huseby's fifteen interrogatories and to thirty-five of its thirty-seven requests for production. (*Id.*)

To be sure, the Defendants asserted other objections as well, but the record reveals that they were principally concerned about having to submit to discovery in a case that they regard as meritless. During a ninety-minute meet-and-confer session on April 14, 2021, the Defendants' counsel "consistently asked [Huseby's] counsel for any evidence that Lee Bailey somehow violated what [Huseby] claimed were his post-termination obligations," ostensibly on the belief that Huseby was not entitled to discovery unless it first came forward with additional evidence of Bailey's misconduct beyond the LinkedIn profile and the other information it had disclosed in its interrogatory response. (Decl. of A. Natale, ECF No. 54-4, ¶ 7.) Counsel also asserted that "because Bailey played no role in developing BLT's business in Connecticut during the one year

period covered by his alleged post termination obligations and because Huseby could not point to a single alleged wrongful act by Bailey, Huseby was not entitled to such information as it was not relevant or material to the claims in this case." (*Id.* ¶ 9.) Huseby responded that the Defendants' "arguments and contentions about the merits of the case . . . are legally irrelevant to the resolution of the discovery issues," but the Defendants apparently persisted in conditioning further discussions on Huseby coming forward with "a single provable allegation that Brandon and BLT did a single thing wrong between October 2018 and the time Bailey was hired." (E-mail exchange between M. Carpenter and A. Natale, Ex. E to Aff. of M. Carpenter, ECF No. 53-7; *see also* Opp'n, ECF No. 54, at 10 (stating that, "[h]ad Plaintiff answered this question," the Defendants "would have been obliged to consider Plaintiff's response and perhaps withdraw some of" their objections).)

Claiming that the meet-and-confer process had reached impasse, Huseby filed its motion to compel on May 7, 2021. (Mot. to Compel, ECF No. 53.) In its accompanying memorandum of law, it argued that its requests were relevant to the parties' dispute (Memo., ECF No. 53-1, at 9-12); that the Defendants' objections were mere boilerplate that the Court should disregard (*id.* at 12-15); and that the Defendants were impermissibly raising merits arguments as purported defenses to discovery. (*Id.* at 15-17.) Huseby also argued that the Defendants had waived any attorney-client privilege or work product objections by failing to serve a privilege log (*id.* at 17), and that the Court should "[a]ward[] Plaintiff expenses, including attorney's fees, in bringing this Motion to Compel pursuant to Fed. R. C. P. 37(a)(5)(A)." (*Id.* at 18.)

The Defendants filed their opposition on May 28, 2021. (Opp'n, ECF No. 54.) They began by arguing that Huseby's motion failed to comply with Local Rule 37. (*Id.* at 8-14.) Turning to the substance of the motion, they disclaimed any intention to assert the meritlessness of the suit as

a defense to any discovery request.  (*Id.* at 16.)  Instead, they principally argued that Huseby's

requests were disproportionate to the needs of the case (*id.*), even though they had not expressly

objected to any interrogatory or request for production on that ground.  (*See generally* Responses.)

They also contended that the motion was so "fatally defective" that the Court should award fees

and costs to them, not to Huseby.  (Opp'n at 24.)  Huseby filed its reply on June 11, 2021 (Reply,

ECF No. 55), and Judge Arterton referred the motion to the undersigned on June 24, 2021.  (Order,

ECF No. 56.)  The Court heard oral argument on July 7, 2021.  (*See* Minute Entry, ECF No. 64.)

At the oral argument, the Court noted that the Defendants had not complied with Rule 34's

requirement that they "state whether any responsive materials are being withheld on the basis of"

their objections.  Fed. R. Civ. P. 34(b)(2)(C).  The Defendants had responded to several requests

for production by asserting extensive objections and then stating that, "[n]otwithstanding the

foregoing objections and without waiving same," they "have no documents responsive to this

request in their possession, custody, and/or control."  (*E.g.*, Responses at 16.)  This left unclear

whether the Defendants were claiming to possess no responsive documents *at all*, or whether

instead they were merely stating that they possessed no responsive documents *that they did not

object to producing.*  To clear this up, the Court directed them to file a sur-reply "disclos[ing]

whether [they] would, if their pending objections were overruled, have responsive documents to

produce beyond those already disclosed."  (Sur-Reply, ECF No. 65.)

The Defendants filed their sur-reply on July 9, 2021, and in it they asserted that they have

no additional documents to produce with respect to seventeen of the thirty-five contested requests

for production.  (*Id.*)  In a footnote, however, they added that they were still "re-examining their

records to locate any and all" documents responsive to one key request for production (*id.* at 2 n.2)

– Huseby's Request No. 11, in which it had asked the Defendants to produce all communications

between Bailey and any former Huseby clients.  (*See* Responses at 19.)  In any event, now that the Defendants' sur-reply has been filed, the motion is fully briefed and ripe for decision.

## II.   DISCUSSION

### A.   Local Rule 37

The Defendants begin their Opposition by asserting that "Huseby has failed to comply with . . . the certification requirement of Local Rule 37(a)."  (Opp'n at 1.)  Under that rule, motions to compel must be accompanied by an affidavit certifying that counsel for the moving party "has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court, and has been unable to reach such an agreement."  D. Conn. L. Civ. R. 37(a).  The Defendants claim that Huseby's motion and the supporting affidavit from its attorney, Michael Carpenter, are both "devoid of any such certification."  (Opp'n at 8.)

The record does not support the Defendants' claim.  In his affidavit, Attorney Carpenter certified that he "attempted in good faith to resolve the current discovery dispute without the intervention of the Court."  (Aff. of M. Carpenter, ECF No. 53-2, ¶ 3.)  The Defendants evidently believe that he did not try hard enough (Opp'n at 9-10), but the record confirms that Attorney Carpenter wrote a long letter, explaining in detail the deficiencies that Huseby claimed to observe in the Defendants' discovery responses (Ex. D to Aff. of M. Carpenter, ECF No. 53-6); followed up the letter with a ninety-minute meet-and-confer phone call to the Defendants' counsel (Memo. at 4); followed up that call with several e-mails (*e.g.*, Ex. E to Aff. of M. Carpenter, ECF No. 53-7); and filed the motion to compel only after the Defendants made clear that they would not withdraw any of their objections unless Huseby first provided additional evidentiary support for its claims.  (*See id.* at 4) (e-mail from A. Natale to M. Carpenter, declining to withdraw objections unless Huseby first came forward with "some fact that supports the idea that BLT or Brandon

engaged in some unfair business practice").  Huseby's motion complies with the certification requirement of Local Rule 37(a).

The Defendants next argue that "Huseby has failed to comply with . . . the particularization requirements of Local Rule 37(b)."  (Opp'n at 1.)  Under that rule, a motion to compel must be supported by a memorandum that "contain[s] a concise statement of the nature of the case and a specific verbatim listing of each of the items sought or opposed."  D. Conn. L. Civ. R. 37(b).  "[I]mmediately following each specification," the memorandum "shall set forth the reason why the item should be allowed or disallowed."  *Id.*  When several different discovery requests are at issue, the rule provides an alternative to a "specific verbatim listing": in that situation, the memorandum may "group the items into categories in lieu of an individual listing of each item."  *Id.*  The Defendants assert that Huseby did not comply with either option; they argue that the motion contains "no 'verbatim listing of each of the items of discovery sought or opposed' . . . . [n]or is there any attempt to 'group the items.'"  (Opp'n at 11.)

The Court disagrees, because as Huseby points out, its submission "included a list of the deficient responses, a categorization of the discovery deficiencies," and a copy of the 17-page letter "that went through the Interrogatories and Requests for Production, at length, and explained by the discovery was sought."  (Reply at 3.)  Furthermore, the Court regards Huseby's submission as comporting with the purpose of the rule.  Plainly, the purpose of Rule 37(b) is to ensure that the movant is clear about what he wants and why he wants it.  *Cf., e.g., City of New Haven v. Ins. Co. of Pa.*, No. 3:10-cv-02047 (PCD), 2011 WL 13232223, at *3 (D. Conn. Dec. 13, 2011) (denying motion to compel in part because of non-compliance with Rule 37(b), but only because the non-compliance was so profound as to "leave[] the actual parameters of the discovery [the movant] seeks highly ambiguous").  Here, Huseby has been reasonably clear about what it wants and why

it believes it is entitled to it.  To be sure, it has not fully explained the relevance of some of its requests, but the Court can and will address those as failures to sustain its burden under Fed. R. Civ. P. 26(b)(1) rather than as failures to comply with Local Rule 37(b).

### B.    Issues Implicating Multiple Discovery Requests

With that objection addressed, the Court will turn to the substance of Huseby's motion. Both parties exhort the Court to decide some issues on a blanket basis.  Huseby, for example, asks for a broad ruling that all of the forty-nine disputed requests are properly "limited in time." (Memo. at 9.)  Conversely, the Defendants seek a broad ruling that many if not all of the forty-nine requests – and, in particular, the ones that seek to explore BLT's affairs – fail a proportionality analysis under Rule 26(b)(1).  (Opp'n at 1.)  The Court will address these claims in this section and, after concluding that neither party is entitled to the blanket ruling that it seeks, it will individually analyze the forty-nine requests in Section II.C.

### 1.    Relevance Under Rule 26(b)(1) and the Temporal Scope of Huseby's Requests

Subject to the proportionality requirement and other limitations set forth in Rule 26, a party may discover relevant, nonprivileged information in the other party's possession.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."  Fed. R. Civ. P. 26(b)(1).  Moreover, information "within the scope of discovery need not be admissible in evidence to be discoverable."  *Id.*

Information is "relevant" if it "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003).  In the discovery phase of a case, "[t]his obviously broad rule is liberally construed."  *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing *Oppenheimer Fund, Inc. v. Sanders,*

437 U.S. 340, 351 (1978)).   In part because the concept of relevance is not limited by considerations of evidentiary admissibility at the discovery stage, *see* Fed. R. Civ. P. 26(b)(1), "[i]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-Civ.-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016); *accord Pal v. Cipolla*, No. 3:18-cv-00616 (MPS) (TOF), 2020 WL 564230, at *7 (D. Conn. Feb. 5, 2020) (relevance is "construed broadly" in discovery); *Martino v. Nationstar Mortg. LLC*, No. 3:17-cv-1326 (KAD), 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (at discovery stage, relevance is "an extremely broad concept").

When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks.   "The burden of demonstrating relevance [is] on the party seeking discovery." *A.M. v. Am. Sch. for the Deaf*, No. 3:13-cv-1337 (WWE) (JGM), 2016 WL 1117363, at *2 (D. Conn. Mar. 22, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-Civ.-9792 (WHP) (JCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015); *see also Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (same). Huseby cites *Luck v. McMahon*, No. 3:20-cv-00516 (VAB), 2021 WL 413638, at *3 (D. Conn. Feb. 5, 2021) for the proposition that the "objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded by the federal discovery rules, each request is not relevant" (Reply at 5), but it neglects to note that this burden applies only after "the party seeking discovery has demonstrated relevance." *Luck*, 2021 WL 413638 at *3; *accord Melillo v. Brais*, No. 3:17-cv-00520 (VAB), 2018 WL 306698, at *1 (D. Conn. Jan. 5, 2018) ("*Where the discovery sought is relevant*, the party seeking protection bears the burden of showing" why it should not be allowed.) (emphasis added).  Put differently, the moving party must make "a *prima facie* showing of relevance," after which "it is up to the responding party to justify

curtailing discovery." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012)).

In this case, one of the parties' relevance disputes concerns the temporal scope of Huseby's requests.  Huseby initially requested information "from 2016 to present," but when the Defendants pointed out that BLT and BLG had not even been formed until October 2018 and February 2019, respectively (Responses at 3), Huseby evidently retracted its request for information pre-dating the companies' founding.  (*See* Ltr. from M. Carpenter to A. Natale, Ex. D to Aff. of M. Carpenter, ECF No. 53-6, at 8.)  Still, the parties dispute the relevance of information from before March 1, 2019 – Bailey's last day as a Huseby employee – or after March 1, 2020, the date on which his post-employment covenants expired.[2]

The Court generally agrees with the Defendants on this point.  Huseby has not adequately explained why information outside the one-year covenant period is relevant to any claim or defense in the case, even when the term "relevant" is accorded the broad construction due to it at the discovery stage.  Its brief contains only *ipse dixit* assertions that the temporal scope of its requests is "appropriate[]" (Memo. at 12); "routine and relevant for the claims asserted" (*id.* at 9), and "standard for an action alleging" the wrongs that it has alleged.  (*Id.*)  Yet these assertions do not explain why information outside the covenant period would have "any tendency to make" a consequential "fact more or less probable than it would be without the evidence."  *In re PE Corp. Secs. Litig.*, 221 F.R.D. at 23.  In a few instances, the relevance of such information is plain from

---

[2]     The parties agree that Bailey's employment with Huseby ended on March 1, 2019.  (Pl.'s Ans. to Counterclaim, ECF No. 30, ¶ 11) (admitting the truth of Bailey's counterclaim allegation that "his last day of work" was "March 1 2019").  The Defendants contend that the post-employment covenants in his employment agreement are unenforceable.  (Opp'n at 6 n.3.)

the face of the request (*see* discussion, Section II.C *infra*), but the Court declines Huseby's invitation to regard 2018-2020 as the relevant time period for all of its requests on a blanket basis.

### 2.      *Proportionality*

Initially, the Defendants did not expressly object to any of Huseby's interrogatories or requests for production on lack-of-proportionality grounds.  (*See generally* Responses.)  Clearly, they were then principally concerned about having to submit to discovery in a case they regarded as meritless.  They objected to several requests on the claimed ground that they had "been provided with no evidence which would permit Plaintiff" to propound the request "in good faith."  (*E.g.*, Responses at 24.)   And during the meet-and-confer process, they complained about being "ransack[ed] . . . under the guise of discovery" in a case in which Huseby allegedly failed to come forward with "a single fact that shows [the Defendants] violated any duty."  (E-mail from A. Natale to M. Carpenter, Ex. E to Aff. of M. Carpenter, ECF No. 53-7, at 5.)  So far as the record discloses, the Defendants were not concerned about burden or lack of proportionality at that time.  Indeed, the record suggests that their counsel had not even inquired whether his clients possessed responsive documents, and therefore could not have known what burdens compliance would entail. (*See id.* at 6) ("I have no idea what my clients have for business.").

Of course, a party may not typically object to relevant discovery on the ground that it believes its opponent's case to be meritless.   "[I]t is well established that discovery ordinarily should not 'be denied because it relates to a claim or defense that is being challenged as insufficient.'"  *Admiral Ins. Co. v. Versailles Med. Spa, LLC*, No. 3:20-cv-00568 (JCH) (TOF), 2021 WL 106273, at *3 (D. Conn. Jan. 12, 2021) (quoting Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008 (3d ed.)).  In *Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co.*, for example, the defendant sought to rescind a contract of reinsurance that it had issued to the

plaintiff, and in discovery it requested copies of the plaintiff's underwriting guidelines. No. 90-Civ.-7811 (KC) (JCF), 1993 WL 437767, at *3 (S.D.N.Y. Oct. 26, 1993). The plaintiff resisted on the ground that the "rescission claim is without basis," but the court observed that "a discovery motion is not the proper forum for deciding the merits of" the claim. *Id.* The court added that if the plaintiff "desire[d] to contest the legitimacy of its opponent's claim, it should do so with the appropriate motion." *Id.* Unless and until such a motion is made and granted, however, the opponent is entitled to discover information relevant to its claim. *Id.*

In their briefing before this Court, the Defendants have recast their objections as lack-of-proportionality objections. Rule 26(b)(1) provides that discovery requests must be "proportional to the needs of the case." And proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The Defendants observe that "[t]he proportionality analysis focuses on the marginal utility of the requested discovery," and they note that a motion to compel may properly be denied when the movant's "need for the requested discovery appears minimal, at best." (Opp'n at 18) (quoting *Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co.*, No. 3:19-cv-00839 (JCH) (RAR), 2020 WL 6074204, at *6 (D. Conn. Oct. 15, 2020). They argue that many of Huseby's requests – especially those requests that seek to explore BLT's affairs – fail a proportionality analysis because they have little or no marginal utility to the case.

Yet the Defendants' claims about marginal utility are true only if one first assumes the truth of their view of a key, disputed issue. The Defendants argue that BLT's affairs have no marginal value to the case because they have filed declarations stating that Bailey did not work for BLT in

Connecticut during his non-compete period.  (*See* Opp'n at 18.)  But Huseby says that he did, and it claims to have at least three *bona fide* reasons for saying so.  (*See* discussion, p. 4 *infra*.)  The Defendants cite no authority for the proposition that a responding party may deny a contested factual allegation and then claim that its denial renders discovery into that topic "of no marginal utility" and therefore "disproportionate."  If that were the rule, it would be difficult to see how anyone would ever get any discovery.  A defendant in an intersection accident, for example, could simply file an affidavit claiming, "I had the green light," and then resist all discovery into who had the right of way as "disproportionate."

The record before the Court does not support a broad holding that inquiry into BLT's affairs is disproportionate.  The question of whether Bailey worked for that company during his non-compete period is an "important[t] . . . issue[] at stake in this action," and discovery is important to resolving it.  Fed. R. Civ. P. 26(b)(1).  Moreover, any additional information on Bailey's relationship with BLT – aside from the LinkedIn profile and the alleged conversations referenced in Section I above – is exclusively within the Defendants' control.  *Id.*  And the Defendants have presented no information on the burdens that compliance would entail,[3] and by extension they have not shown that the "burden and expense of the proposed discovery outweighs its likely benefit."

---

[3]     The Defendants apparently contend that the discovery-seeking bears the burden of proving all of the elements of proportionality, including that its requests are *not* unduly burdensome or expensive to the responding party.  (*See* Opp'n at 1) (asserting that Huseby "fails to explain how its discovery requests comport with . . . the proportionality requirements").  It is clear, however, that the responding party bears the burden on the "burden and expense" element of the proportionality analysis.  *See* Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments (noting that the responding party "ordinarily has far better information – perhaps the only information" – on those elements); *Endurance Am. Spec. Ins. Co. v. Wm. Kramer & Assocs., LLC*, No. 3:18-cv-192 (MPS) (RAR), 2020 WL 6940761, at *7 (D. Conn. Mar. 30, 2020).  Moreover, this burden is not met "simply by making a boilerplate objection that [the requested discovery] is not proportional."  *Id.*  To successfully resist discovery on grounds of undue burden or expense, the responding party ordinarily must "submit[] affidavits or offer[] evidence revealing the nature of the burden."  *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-29 (S.D.N.Y. 2012) (quoting

*Connecticut Municipal Electric Energy Cooperative,* cited by the Defendants, is not to the contrary. In that case, an insurance company accused of breaching its duty to defend served dozens of interrogatories and requests for production on its policyholder. 2020 WL 6074204, at *1-4. Weighing Rule 26(b)(1)'s proportionality factors, the court held that the insurer's "need for the requested discovery appears minimal, at best." *Id.* at *8. It did so, however, because disputes over an insurance company's duty to defend are ordinarily based on the allegations in the underlying complaint against the policyholder, not on the "facts and circumstances aris[ing] throughout litigation" that the insurer's requests sought to explore. *Id.* The court's analysis of Rule 26(b)(1)'s "importance of the discovery" factor provides no support for the Defendants' claim that they can render Huseby's requests "unimportant" by submitting a declaration denying a contested issue. Moreover, in *Connecticut Municipal Energy Electric* Cooperative, the policyholder came forward with concrete evidence of the burdens that compliance would entail. *Id.* at *9 (policyholder established that insurer's "production requests would encompass over a million documents and the cost would be prohibitively expensive"). Here, the Defendants have made no such demonstration. For these reasons, the Court declines to hold that Huseby's requests fail Rule 26(b)(1)'s proportionality test on a blanket basis.

## C. The Individual Discovery Requests

With the parties' blanket claims about relevance and proportionality thus addressed, the Court will turn to the individual discovery requests. It rules upon the fourteen disputed interrogatories and thirty-five disputed requests for production as follows:

---

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petro. Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984).) In this case, the Defendants have submitted no such evidence.

**Interrogatory 1** inquires into "the nature, basis, amount and manner of computation of each and every item of damage, loss or expense" for which Bailey seeks recovery in his counterclaim.  (Responses at 2.)  Information responsive to this interrogatory is plainly relevant to that claim, and indeed Rule 26(a)(1)(A)(iii) affirmatively requires that Bailey disclose it.  The Defendants provided an answer to this interrogatory, but their answer was subject to objections that it was overbroad, vague, ambiguous, and "call[ed] for information in Plaintiff's possession." (*Id.*)  The Court observes nothing vague or otherwise improper in this interrogatory, and the Defendants' objections are overruled.  They are ordered to serve a revised response, without objections.

**Interrogatories 2, 3, 8 and 9** and **Requests for Production 26 and 27** concern the Defendants' court reporting work.  **Interrogatories 2 and 3** asked the Defendants to disclose information about each court reporting job they "scheduled or assisted . . . in Connecticut and/or Massachusetts from 2016 to present," including the date of the job and the law firm client.  (*Id.* at 2.)  **Request for Production 26** asked them to produce "copies of all invoiced for each Job identified in response to Interrogatory No. 3."  (*Id.*)  **Interrogatories 8 and 9** asked for additional information on jobs "conducted . . . from October 1, 2018 to the present," including the fees charged and collected and the court reporter employed, and **Request for Production 27** sought production of the corresponding job invoices.  (*Id.* at 5-6.)  The Defendants objected on grounds of irrelevance to providing any responsive information from BLT, and to providing responsive information for BLG outside the period from March 1, 2019 to March 1, 2020 (hereinafter the "Relevant Period").  (*Id.*)  For the reasons discussed above, the latter objection is meritorious but the former is not.

The Defendants also objected on the ground that any jobs booked by persons other than Bailey are irrelevant, because BLT, BLG and Brandon were free to compete against Huseby in both Connecticut and Massachusetts at all times relevant to this action.  (*Id.*)  Huseby's memorandum does not address this point, except to make an *ipse dixit* claim that "jobs booked in Connecticut during the protected period" "fall squarely within the scope of the allegations of the Complaint."  (Memo. at 10.)  In its April 13, 2021 meet-and-confer letter, Huseby cited its claims under the North Carolina and Connecticut Unfair Trade Practices Act and the Connecticut Uniform Trade Secrets Act, and complained that the "Defendants have failed to explain how information regarding the Defendants' operation in Connecticut would ***not*** be directly relevant to prosecuting or defending these claims."  (Ltr. from M. Carpenter to A. Natale, Ex. E to Aff. of M. Carpenter, ECF No. 53-6, at 3) (emphasis in original).  But this gets the burdens backwards; it is Huseby's burden to make a *prima facie* showing of relevance, not the Defendants' burden to disprove it. *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016).  Huseby has not explained how a court reporting job booked by, say, John Brandon would be relevant to a dispute over Bailey's compliance with his employment covenants.  Its request for an order directing compliance with Interrogatories 2, 3, 8 and 9 is therefore granted only to the extent that the Defendants are ordered to revise their responses to encompass any jobs scheduled or conducted by Bailey for BLT during the Relevant Period.  If there are no such jobs, Bailey, BLT and Brandon shall so state under oath. If, however, additional jobs are disclosed, the Defendants shall supplement their response to Request for Production Nos. 26 and 27 to produce the invoices for those jobs.

**Interrogatory 4** asks the Defendants to identify "any and all written agreements between or among" them.  (Responses at 4.)  The Defendants' initial response that "there are no such agreements" was subject to an objection (*id.*), but in their sur-reply they represented without

qualification that they have no such documents.  (Sur-Reply, ECF No. 65, at 1.)  Huseby has not come forward with any evidence that would call this representation into question, and accordingly its motion to compel a further response to this interrogatory is denied.

**Interrogatory 5** asks the Defendants to identify all persons employed by them "from 2016 to the present," and for each such employee, to "identify their date(s) of hire, their position and titles, date(s) of separation, and which Defendant they were employed by."  (Responses at 4.)  The Defendants partially answered by listing their employees' names, hiring dates, and separation dates, subject to the same temporal overbreadth objection that they asserted in response to Interrogatories 2 and 3, but omitting the employees' positions and job titles.  As noted above, the temporal overbreadth objection is meritorious, but the Defendants are directed to revise their interrogatory response to state the employees' positions and job titles during the Relevant Period.

**Interrogatory 6** seeks information on "phone numbers, email addresses, social media accounts, website addresses and physical addresses used by each of the Defendants from 2016 to present" (*id.*), presumably for the purpose of probing their claim that BLT and BLG operated exclusively in Connecticut and Massachusetts, respectively.  The Defendants answered this interrogatory subject to their temporal overbreadth objection, except that they did not provide Bailey's e-mail address.  Because that piece of information may be relevant to the disputed question of whether Bailey worked for BLT or BLG during his non-compete period, the Court directs the Defendants to revise their answer to provide it.

**Interrogatory 7** asks the Defendants to identify "all persons contacted by any of the Defendants at the entities listed in the document Plaintiff previously produced to Defendant as Exhibit A."  (Responses at 6.)  Relatedly, **Interrogatory 10** asks each Defendant to "identify the total amount of gross revenue . . . generated for the entities listed on Exhibit A from 2016 to the

present." (*Id.* at .)  The Defendants objected to both interrogatories on the ground that "'Exhibit A' is not defined" (*id.* at 6-8), but Attorney Carpenter's April 13, 2021 letter explained that "Exhibit A" was a customer list that Huseby had previously produced.  (Ltr. from M. Carpenter to A. Natale, Ex. D to Aff. of M. Carpenter, ECF No. 53-6, at 6.)  The Defendants additionally objected on the ground that Huseby had purported to designate its client list as "Confidential – Attorneys' Eyes Only," thus preventing them from seeing the document and formulating an answer (Responses at 6-8), but the Court's February 24, 2021 order mooted this objection.  (Order on Mot. to Compel, ECF No. 50.)  To the extent that the Defendants still object on those two grounds, those objections are overruled.

The Defendants also objected to Interrogatories 7 and 10 on grounds of temporal overbreadth, and on the ground that the two interrogatories are "not limited in any way to persons and/or entities Huseby asserts are its clients and/or potential clients."  (Responses at 6.)  The first objection is meritorious, but the second is not.  By their terms, the interrogatories are limited to "persons and/or entities" that Huseby identified on its customer list.  The Defendants are directed to answer Interrogatories 7 and 10 for the Relevant Period.

**Interrogatory 11** seeks information on "marketing or outreach undertaken by any of the Defendants to solicit Jobs."  (Responses at 8.)  The Defendants objected on the ground that Brandon's, BLT's and BLG's "marketing or outreach . . . is irrelevant," since they were not "under any obligation or duty to" Huseby.  (*Id.*)  Subject to their objections, they answered the interrogatory by agreeing to produce "documentation relating to marketing/outreach by Bailey as an employee of" BLG during the Relevant Period.  (*Id.*)

While the Court agrees that Huseby has not adequately explained the relevance of "marketing or outreach" by Brandon, BLT or BLG, it does not agree that Bailey was entitled to

limit his response to "marketing or outreach" that he conducted while "an employee of BLG."  If Bailey conducted any "marketing or outreach" for BLT, that would plainly be relevant to Huseby's non-compete and non-solicitation claims.  The Defendants are therefore ordered to serve a revised response, removing that limitation and identifying any marketing or outreach activities performed by Bailey – whether for BLT or BLG – during the Relevant Period.  If Bailey conducted no such activities for BLT, the Defendants shall so state under oath.

Interrogatory 12 asks the Defendants to "[i]dentify and explain the ownership and management of [BLG] and [BLT], including the ownership of each entity over time and any and all management and officer positions over time."  (Responses at 8.)  The Defendants answered this interrogatory subject to their temporal overbreadth objection.  (*Id.*)  The Court having determined that objection to be valid, Huseby's motion to compel is denied with respect to Interrogatory 12.

Interrogatory 13 asks the Defendants to identify all of the customers to whom Bailey marketed while he was employed by Huseby.  (Responses at 9.)  Brandon, BLT and BLG responded that they are "without information" responsive to this interrogatory.  Bailey responded that he "did not keep any records of his activities as an employee of" Huseby or HIS and therefore "cannot properly respond."  This is a sufficient response under the circumstances of this case, and Huseby's motion to compel is therefore denied with respect to Interrogatory 13.

Interrogatory 14 asks the Defendants to "[i]dentify and explain what information each Defendant retains about their customers/clients, including for each Defendant how such information is maintained (e.g. whether by way of software or a database or in paper form) and who has access to such information."  (Responses at 9.)  Huseby has not met its initial burden to show that this interrogatory seeks information that is relevant to an extant claim or defense.  (*See generally* Memo. (failing to explain relevance of Defendants' customer information systems); Ltr.

from M. Carpenter to A. Natale, Ex. D to Aff. of M. Carpenter, ECF No. 53-6, at 8 (deficiency letter failing to explain relevance and contending that Defendants nonetheless have the burden to prove lack of relevance).)  Its motion to compel is therefore denied with respect to Interrogatory 14.

**Requests for Production 1 and 2** seek "all documents identified, referenced or relied upon" by the Defendants in answering the Amended Complaint, asserting their Special Defenses, or in asserting Bailey's Counterclaim.  (Responses at 14-15.)  The Defendants objected on the ground that the term "relied upon" is "not defined," "ambiguous," and "potentially overbroad" (*id.*), but the Court observes nothing ambiguous in the request and these objections are therefore overruled.  The Defendants also objected "to the extent that compliance . . . would require the production of documents sought by other Requests for Production to which [they] have objected" (*id.*), but in its sur-reply they state that their only responsive documents are "Bailey's employment agreement with Huseby and pre-trial correspondence from Huseby's counsel" (Sur-Reply, ECF No. 65, at 1), and they have not asserted any valid objection to the production of those documents. Finally, they objected on attorney-client privilege and work product grounds "to the extent that" the two requests "seek[] documents involving communications to or from counsel" (Ex. D to Memo., ECF No. 53-5), but in their sur-reply they indicate that there are no such documents.  (Sur-Reply, ECF No. 65, at 1.)  Huseby's motion is therefore granted with respect to Requests for Production 1 and 2, and the Defendants are ordered to produce any documents responsive to those requests.

The Defendants have stated that they have no documents responsive to **Requests for Production 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, 19, 35, 36 and 37.**  (Sur-Reply, ECF No. 65.) When a party makes such a representation in response to a motion to compel, the Court is presented

with the question of whether it should nevertheless place that party under an order to produce. "Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) (quoting *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D. Del. 1973)).  This principle has been held not to apply, however, "when the requesting party has a strong reason for disbelieving the responding party's claim to have made a complete production – in other words, a reason backed up by solid evidence rather than mere suspicion." *Lewis v. Doe*, No. 3:19-cv-02015 (JCH) (TOF), 2021 WL 863473, at *5 (D. Conn. Mar. 8, 2021). Where the moving party "cite[s] to specific evidence" challenging a "blanket assertion that no additional documents exist," the responding party may properly be placed under an order to produce.  *Id.* at *6.

In this case, Huseby has cited no "solid evidence," only "mere suspicion."  It highlights Request for Production Nos. 4 and 5 – which inquired after documents relating to the establishment and operation of BLG – and it argues that it "stretches credulity that Bailey and Brandon would have exchanged zero communications . . . relevant to setting up a new company, operating a company in a new territory, [or] being employed by two companies owned by Brandon."  (Reply at 11.)  This is merely suspicion, however, and it is not backed up by evidence such as deposition testimony confirming that responsive documents exist.  *See, e.g., Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.*, 318 F.R.D. 28, 43 (S.D.N.Y. 2016) (holding that moving sufficiently "identified specific evidence to call into question [non-movant's] contention that no further responsive documents exist" by pointing to non-movant's contrary deposition testimony).

Huseby's motion to compel is denied with respect to Request for Production Nos. 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, 19, 35, 36 and 37 on the current record.

**Request for Production 11** seeks "all documents . . . or communication[s] between Lee Bailey and any current or former customers/clients of Huseby, LLC."  (Ex. D to Memo., ECF No. 53-5.)  This request is plainly relevant to Huseby's non-competition and non-solicitation claims.  And because it is relevant, the burden shifts to the Defendants to show why it should not be allowed.  *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009) (holding that once relevance is shown, "[t]he party resisting discovery bears the burden of showing why discovery should be denied").  The Defendants objected on the ground that the phrase "'current of former customers/clients of Huseby, LLC' is undefined . . . [and] may include entities of whose purported status as a client of Plaintiff Defendants are unaware" (Responses at 19), but this is no reason not to respond with respect to those entities the Defendants know to be Huseby's customers, including the entities listed on the customer list that Huseby produced as "Exhibit A."  The Defendants also objected on the ground that "Bailey's post-termination obligations did not prevent him from *communicating* with Plaintiff's customers, rather it prohibited *solicitation* of them" (*id.*) – in other words, they object to producing social and other communications that did not amount to a solicitation – but in the absence of a valid burdensomeness objection, Huseby is entitled to review responsive communications and decide for itself whether they amounted to a solicitation.  The Defendants' objections to Request for Production 11 are overruled, and they are directed to produce responsive documents for the Relevant Period.

**Requests for Production 12 and 13** seek "all documents . . . and communication[s] between" Bailey and any clients of BLG or BLT.  (Responses at 19.)  To the extent that those clients were within the geographic and temporal scope of the non-competition clause, these two

requests seek relevant discovery.   The Defendants are therefore ordered to produce any "documents, including but not limited to, notes, diaries, summaries and records of any kind concerning any conversation, meeting or communication between Lee Bailey and any" client of BLG or BLT located within the geographic scope of the non-competition clause, where such "conversation, meeting or communication" took place during the Relevant Period.

**Request for Production 20** seeks "copies of all correspondence with any current or former employees of Huseby." (Responses at 21.)  To the extent that those communications came from Bailey, they would plainly be relevant to Huseby's claim that he breached his non-interference covenant.   Huseby has not, however, shown the relevance of any such communications from Brandon.  As the Defendants point out, Brandon's non-solicitation obligations expired in 2018, and he was free to correspond with Huseby employees during the Relevant Period.

The Defendants objected to producing Bailey's correspondence with his former Huseby colleagues on the ground that the request was "overbroad" (*id.*), but in their sur-reply they stated that the only responsive documents are text messages.  (Sur-Reply, ECF No. 65, at 2.)  They evidently contend that the "communications [were] of a personal, or non-professional" nature (Ex. D to Memo., ECF No. 53-5), but Huseby is entitled to see them to make that determination for itself.  The Defendants are directed to produce all communications between Bailey and any Huseby employees during the Relevant Period.  Their objection to producing correspondence between Brandon and those employees is sustained.

**Request for Production 21** seeks "copies of all correspondence with court reporters who currently or have previously provided court reporting services to Huseby, LLC." (Responses at 22.)  Like the communications sought by Request for Production 20, any correspondence responsive to Request for Production 21 would be relevant to Huseby's non-interference claim if

it came from Bailey, but irrelevant if it came from Brandon.  The Defendants represent that Bailey "has no responsive documents" (Sur-Reply, ECF No. 65, at 2), and Huseby has come forward with no evidence-based reason to disbelieve that representation.  Huseby's motion is therefore denied with respect to Request for Production 21.

**Request for Production 22** seeks "a copy of the contents of all [of the Defendants'] social media profiles, including but not limited to, Facebook, Twitter, LinkedIn and Instagram."  Bailey identified his employer on at least one of his social media accounts (*see* Ex. A to Decl. of L. Bailey, ECF No. 54-2), and accordingly those accounts are relevant to the disputed question of whether he worked for BLT or BLG.  Similarly, BLG's and BLT's social media accounts may describe the two companies' geographic responsibilities and shed light on whether Bailey's work complied with his obligations to Huseby.

With that noted, the Defendants validly object "to the extent that [the request] seeks the production of personal, non-business information of John Brandon and/or Lee Bailey."  The Defendants are ordered to produce BLT's or BLG's social media profiles in use during the Relevant Period, and any information from any of Bailey's social media profiles that identifies his employer or job duties during the Relevant Period.  Huseby's request for an order compelling compliance with Request for Production 22 is otherwise denied.

**Requests for Production 23 and 24** seeks the Defendants' price lists before (Request 23) and after (Request 24) March 1, 2019.  (Responses at 23.)  Notably, the Defendants did not object to these requests on the ground that the lists contain or constitute trade secrets, or are otherwise commercially sensitive.  (*Id.*)  Unusually for a case of this nature, their sole non-boilerplate objection is that the requested documents are irrelevant.  Price lists, however, may show whether the Defendants' pricing suddenly changed shortly after Bailey came on board, and by extension

they may be probative of Huseby's claim that he breached his non-disclosure obligations. The Defendants' objections are overruled, and they are directed to produce any documents responsive to Requests 23 and 24.

**Requests for Production 25 and 28** seek documents relating to the Defendants' customer, court reporter and pricing lists before (Request 25) and after (Request 28) March 1, 2019. (Responses at 24-25.) Aside from their objections on grounds of vagueness and ambiguity – which the Court overrules, because it observes nothing ambiguous in the requests' terms – the Defendants' principal objection is that BLT's and BLG's customer and reporter lists are "not relevant to any claim or defense in this case." (*Id.*) They do not object on grounds of confidentiality, commercial sensitivity, or undue burden.

Under the facts of this case, the Court disagrees with the claim that customer and reporter lists are irrelevant. Presumably Huseby wishes to discover BLT's and BLG's pre-March 1, 2019 lists – that is, their lists in use before Bailey came on board – to contrast them with the lists used after he was hired. This is relevant information in the Rule 26(b)(1) sense, particularly given the expansive construction accorded to the term "relevant" during the discovery phase of a case, because it "has a[] tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See In re PE Corp. Secs. Litig.*, 221 F.R.D. at 23. The Defendants' objections are overruled, and they are directed to produce documents responsive to Requests 25 and 28.

**Request for Production 29** seeks "copies of any lease(s) signed for use by any of the Defendants from 2018 to the present." (Responses at 25.) The Defendants agreed to "produce documents evidencing the terms of use and occupancy of the premises used by" BLG and BLT for the Relevant Period, but objected to producing earlier or later information. (*Id.*) Huseby has not

explained the relevance of that earlier or later information, and accordingly its motion is denied with respect to Request for Production 29.

**Request for Production 30** seeks copies of BLT's and BLG's bank statements "from January 1, 2019, to the present." (Responses at 25.) Relatedly, **Request for Production 31** seeks "the Defendants' tax returns in the State of Connecticut, Commonwealth of Massachusetts, and IRS for the years 2018, 2019, and 2020" (*id.* at 26), and **Request for Production 33** seeks "all Profit and Loss Statements, Balance Sheets, General Ledgers, Asset or Equipment Schedules, and similar accounting records for" BLG and BLT. (*Id.*) The Defendants agreed to produce BLG's bank statements for the Relevant Period, and its accounting records for 2019 and 2020, but otherwise objected to these requests. Huseby has not explained the relevance of bank statements, tax returns, and other financial documents that typically do not contain client-level detail to a dispute over Bailey's compliance with his employment covenants. Its motion is therefore denied with respect to Requests 30, 31 and 33.

**Request for Production 32** asks the Defendants to produce "a current copy and any prior versions or cached copies of your website(s)." (*Id.*) This is relevant discovery, because BLT's and BLG's websites likely show their service areas and may contain evidence on the particular entity for which Bailey worked. Indeed, at oral argument the Defendants conceded that Huseby is "entitled to" copies of their websites. Huseby's motion is therefore granted with respect to Request for Production 32.

**Request for Production 34** seeks "any and all documents" in the Defendants' possession "showing the past and current clients/customers of Huseby, LLC." After asserting some boilerplate objections, the Defendants answered "[t]o the extent that [they were] being asked to produce any Huseby, LLC customer or prospect lists in their possession, custody, and/or control,"

29

but objecting "[t]o the extent" that they were "being asked to produce any and all documents containing the name of any person or entity whom Huseby, LLC claims as a 'client/customer.'" This is a sufficient response, and Huseby's request for an order compelling further responses to Request for Production 34 is denied.

### D.    Privilege

The Defendants objected to Request for Production Nos. 1, 2, 4, 5, 6, 8, 10, 14, 15 and 19 "to the extent that" those requests sought "documents involving communications to or from counsel, and thus protected from disclosure by the attorney-client privilege, and/or documents prepared at the direction of counsel for this litigation and thus protected from disclosure by the work product immunity doctrine."  They did not, however, support any privilege or work product claims with a privilege log, as they are required to do under Fed. R. Civ. P. 26(b)(5) and D. Conn. L. Civ. R. 26(e).  Huseby contends that the Defendants' failure to serve a log constitutes a waiver of any privilege or work product claims.   (Memo. at 17) (citing *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006) and *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 168-69 (D. Conn. 2005).

Huseby is correct that a responding party's failure to serve a privilege log "is sufficient grounds to deem the privilege waived."  *Horace Mann Ins. Co.*, 238 F.R.D. at 538 (citing *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992)).  At the same time, "privileges . . . serve important values," and courts are therefore "not quick to find that they have been waived."  *Imperati v. Semple*, No. 3:18-cv-01847 (RNC) (TOF), 2020 WL 4013304, at *5 (D. Conn. July 16, 2020).  Stated differently, "a court's decision to consider a claim of attorney-client privilege waived should be done only after careful thought."  *Horace Mann Ins. Co.*, 238 F.R.D. at 538.  Reflecting this caution, courts do not often hold that a party automatically waived

its privileges by failing to serve a log exactly on time. Instead, they consider several factors, including "the length of the delay in asserting the privilege claim," "the willfulness of the transgression," and "the harm to other parties occasioned by the delay in asserting the claim." *Imperati*, 2020 WL 4013304, at *5 (quotation marks and citations omitted).

In this case, these factors favor a finding of waiver. The "length of the delay" is quite long, Huseby having served its discovery requests in December 2020 and the Defendants not having served a log at any point in the following seven months. *See id.* at *7 ("[T]he weight of authority in the District of Connecticut regards a five-month delay as supporting a finding of waiver."). And the Defendants' non-compliance can only be regarded as willful because they entirely failed to address this issue in their Opposition or at oral argument. To be sure, Huseby has not explained how it was harmed by the delay, but the Court declines to hold that this factor outweighs the others in this instance.

The Court therefore concludes that the Defendants have waived any attorney-client privilege or work product claims with respect to information or documents responsive to Huseby's requests. For each interrogatory and request for production to which they voluntarily responded, or as to which they have been ordered to respond above, they must respond without withholding any responsive information on grounds of attorney-client privilege or work product protection.

### E.      Expenses of the Motion

Huseby says that it is entitled to an award of "expenses, including attorney's fees," incurred in bringing its motion. (Mot., ECF No. 53, at 2.) The Defendants not only disagree, but argue that an award of expenses should enter in their favor. (Opp'n at 23-25.)

Where, as here, a court grants a motion to compel only in part, requests for awards of expenses are governed by Rule 37(a)(5)(C). That rule provides that "[i]f the motion is granted in

part and denied in party, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." As the use of the word "may" suggests, the decision whether to award fees is within the Court's discretion. *Huminski*, 2017 WL 2779468, at *2.

In this case, the Court declines to award expenses to either party. Other courts have declined to award expenses where, as here, the results of the requesting party's motion were "mixed." *E.g., S.C. Johnson & Son, Inc. v. Henkel Corp.*, No. 3:19-cv-00805 (AVC) (SALM), 2020 WL 5640528, at *12 (D. Conn. Sept. 22, 2020); *Safeplan Platform Sys., Inc. v. EZ Access, Inc.*, No. 06-CV-00726A (HBS), 2011 WL 7473467, at *5 (W.D.N.Y. Dec. 30, 2011) (where results of motion to compel were "mixed," "both sides should bear their own respective costs"). Courts have also declined to award expenses where "both the Plaintiff and the Defendant contributed to the inevitability of th[e] motion to compel," which was the case here. *E.g., Purugganan v. AFC Franchising, LLC*, No. 3:20-cv-00360 (KAD), 2020 WL 4818362, at *5 (D. Conn. Aug. 17, 2020). Huseby contributed to the impasse by failing to explain the relevance of several of its requests, and the Defendants contributed by (among other things) not expressly stating their proportionality objection in their Rule 34 responses or during the meet-and-confer process, and by failing to comply with Rule 34(b)(2)(C).

## III.   CONCLUSION

For the foregoing reasons, the motion to compel of the plaintiff, Huseby, LLC, is granted in part and denied in part. The Defendants shall supplement their interrogatory responses and document production as ordered above by August 12, 2021. *See* D. Conn. L. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order.").

This ruling and order is a "determination of [a] nondispositive motion[] . . . relating to discovery."  D. Conn. L. Civ. R. 72(C)(2).  As such, it is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2.  It is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

Dated at Hartford, Connecticut this 29th day of July, 2021.

*/s/ Thomas O. Farrish*

Thomas O. Farrish
United States Magistrate Judge